**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DEDE ATIOGBE, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | No. 15 C 7547 |
| ) | |
| MEGAN BRENNAN, Postmaster General ) | Judge Rebecca R. Pallmeyer |
| United States Postal Service, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dede Atiogbe has sued Defendant Megan Brennan in her capacity as Postmaster General of the United States Postal Service. Atiogbe was a USPS employee who went on leave in late 2013, and claims she was subjected to discrimination on the basis of her disability and retaliation in a variety of ways during the period leading up to and during her leave. In particular, Atiogbe claims her health insurance coverage was prematurely terminated. Defendant has moved to dismiss, arguing that Atiogbe did not exhaust her administrative remedies and has failed to state a claim. For the reasons stated below, the motion is granted in part and denied in part.

### BACKGROUND

The allegations in Atiogbe's complaint are presumed true for this motion. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 637 (7th Cir. 2015). In addition, Atiogbe has made additional allegations in an affidavit attached in her response to Defendant's motion to dismiss. Defendants accept these facts as true for this motion, so the court does so as well. *See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999) ("[A] plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief in order to defeat a motion to dismiss if these facts are consistent with the allegations in the complaint.") (internal citation and quotation marks omitted). The court will also consider relevant documents from the EEO administrative

1

proceedings, which Atiogbe refers to in her complaint and which Defendant has attached to its motion. *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (internal citation and quotation marks omitted); *In re First Chicago Corp. Sec. Litig.*, 769 F. Supp. 1444, 1450 (N.D. Ill. 1991); *see also* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1327 (3d ed. 2004) (The court may consider "pertinent documents that a plaintiff fails to append to his complaint but that a defendant attaches to his motion to dismiss[.]").

## I. Atiogbe's Disabilities and Leave Without Pay

Dede Atigobe is (or was) an employee of the United States Postal Service, where she has worked as a letter carrier.[1] (*See* Second Am. Compl. ("SAC") [34] ¶ 11.) The job of a letter carrier entails "lifting, carrying, sorting, climbing, walking, and package delivery." (Aff. of Dede Atiogbe, Ex. A to Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Atiogbe Aff.") [40] ¶ 2.) Atiogbe avers that she is currently qualified to perform these functions. (*Id.* at ¶ 3.) She also claims she has documented her ability to work from November 2013 to the present.[2] (*Id.* at ¶ 4.)

Atiogbe suffers from diabetes, high blood pressure, migraines, fibroids, knee injuries, depression, anxiety, and post-traumatic stress disorder. (SAC ¶ 10.) She complains that she experienced a hostile work environment beginning in 2007 (*id.* at ¶ 12), and offers specifics about conduct that occurred from 2013 to the present. In late 2013, Atiogbe alleges that she

---

[1] As noted below, it is unclear whether Atiogbe is a current or former employee.

[2] Defendants attach to their motion a note from Atiogbe's doctor regarding her ability to work in April 2014. (*See* Ex. E to Mot. to Dismiss [35-5].) In the note, Atiogbe's doctor describes her depression and her course of treatment, but notes that "the patient still remains unable to work at this time in any occupation." (*Id.*) Atiogbe's complaint does not reference this note and it is not part of the administrative record, so the court declines to consider it on this pleading motion, but observes that the doctor's note and Atiogbe's treatment history may be inconsistent with the claim that Atiogbe was capable of working at all times since November 2013.

took leave without pay and "provided the necessary paperwork to do so" (she does not say what this paperwork was). (*Id.* at ¶¶ 13–14.) Atiogbe took this this leave because she was "in and out of the hospital" for conditions she does not identify. (*Id.* at ¶ 13.) She returned to work on October 29, when she gave her manager, Jacqueline Hudson, a statement from her doctor, and requested unspecified "accommodations." (*Id.* at ¶¶ 15–16.) Atiogbe alleges that Hudson "rejected the doctor's statement and requested a more detail[ed] note." (*Id.* at ¶ 16.) Atiogbe accordingly provided a more detailed doctor's note, and repeated her request for unnamed "certain accommodations." (*Id.* at ¶¶ 17–18.) Atiogbe alleges that her request was "completely ignored" and that "she found herself in a hostile work environment." (*Id.* at ¶ 19.)

For the next several days, Atiogbe alleges, she was required to work without being given breaks to "take medication, nourishment, and rest"—presumably, these are the accommodations she requested. (*Id.* at ¶ 20.) She complains that Defendant did not follow procedure to determine whether there were positions available where Atiogbe could work with her "restrictions." (*Id.* at ¶ 21.) She was required to share a vehicle and a scanner with another employee,[3] which she claims impaired her ability to work effectively. (*Id.* at ¶ 22.) As a result, Atiogbe alleges, her work environment became "hellish" and she decided to go on leave without pay again, beginning November 11, 2013.[4] (*Id.* at ¶¶ 23–24.) During her period of leave, Atiogbe alleges, she "was to continue to receive medical benefits from [USPS]." (*Id.* at ¶ 24.)

Atiogbe was hospitalized for unidentified treatment from November 13 to November 23, 2013, and remained in an "Intensive Outpatient Partial Hospitalization Program" until March 24, 2014. (*Id.* at ¶ 25.) She claims that she "submitted the necessary paperwork to secure her

---

[3] Atiogbe does not say whether other employees were required to share a vehicle and scanner. She also does not say whether this was itself an adverse action, or merely a condition of employment that she believes she should have been spared due to her disabilities.

[4] Atiogbe alleges that she "decided to go on leave" and "was placed on leave without pay." (SAC ¶ 23–24.) The court assumes, allegations of her unpleasant work environment notwithstanding, that Atiogbe went on leave voluntarily, as opposed to being "placed" on leave when she wanted to continue working.

employment" during this period.  (*Id.* at ¶ 26.)  Yet from January to March 2014, Atiogbe received several five-day-notice letters warning that she had been absent without authorization for more than five days.  (*Id.* at ¶ 27.)  One of these notices, dated March 7, stated that Atiogbe had five days "to submit acceptable documentation for [her] absence."  (Ex. A to Mot. to Dismiss [35-1].)

On March 28, she received a notice that her position with USPS was terminated.  (SAC ¶ 28.)  Atiogbe alleges that she received these notices because Hudson and another USPS manager named Lisa Frazier "put in paperwork to prematurely terminate [her] employment." (Atiogbe Aff. ¶ 10; *see* SAC ¶ 38.)  She filed a union grievance on April 1, and she claims that she was "excluded" from the resulting investigation; she does not say whether or to what extent an employee is ordinarily entitled to participate in such an investigation.  (SAC ¶¶ 29, 31–32, 65.)  The dispute resolution team, which consisted of representatives from both USPS and the union, rescinded her termination on June 19.  (*Id.* at ¶ 32; Ex. D to Mot. to Dismiss [35-4].)  In the meantime, Atiogbe was "in constant contact" with USPS Human Resources and the USPS Employee Assistance Program.  (Atiogbe Aff. ¶ 13.)

Despite this favorable resolution, Atiogbe alleges that she received another termination notification (dated June 20) on June 23.[5]  (SAC ¶ 33, Atiogbe Aff. ¶ 14; *see* SAC ¶ 68.)  The same day, she spoke to a USPS Labor Relations employee, Barbara Singleton, who told her this second termination notice was an error.  (SAC ¶ 35; Atiogbe Aff. ¶ 14.)  The next day, Atiogbe spoke to an HR Manager, Debra White (she says no more about the content of this conversation).  (SAC ¶ 34.)  She also made "investigatory calls" to a variety of other resources, including her "station manager" (Atiogbe does not say who this is), her health insurance company, and her union.  (Atiogbe Aff. ¶ 14.)  She alleges that she received yet another "[f]ive-

---

[5] Atiogbe complains that her termination proceedings should have been stayed between the date on which she filed her grievance and the date when the union dispute resolution process was completed.  (Atiogbe Aff. ¶ 11.)  But the court is uncertain this did not happen; Atiogbe does not allege that she received any notices or other adverse action between April 1, when she filed the grievance, and June 19, when the process was completed.

4

[d]ay notice of termination"[6] on July 14, which required her to attend an investigatory interview. (SAC ¶ 36.) Atiogbe complained to various (unspecified) USPS employees, and on July 21 she "attended the mandatory investigatory interview with [Frazier] and [u]nion representative James Williams." (*Id.* at ¶¶ 37–38.) The court is unaware whether Frazier or Williams conducted the interview, whether Williams was representing Atiogbe, what was discussed, or whether the interview resulted in any further action.

II.  **Atiogbe's Health Insurance**

In her complaint, Atiogbe alleges that she received notice on April 30, 2014 that her health benefits would be terminated, though she does not say when this termination would take effect. (SAC ¶ 30.) Defendants, however, have provided a copy of the notice, which is dated February 20, 2014. (Ex. B to Mot. to Dismiss [35-2].) In her subsequent affidavit, Atiogbe effectively concedes the February 20 letter notified her that her health insurance would be terminated, though it is not clear whether she stands by her assertion that she did not receive it until April 30. (Atiogbe Aff. ¶¶ 8–9.)

Although it was sent before the March 7 and March 28 letters warning that Atiogbe was absent without authorization), the February 20 letter acknowledges that Atiogbe was "in a leave without pay (LWOP) status" beginning November 11, 2013. (Ex. B. to Mot. to Dismiss.) It states that Atiogbe had 31 days to decide whether to continue her health benefits for 365 days,[7] or to terminate her health coverage while on leave without pay. (*Id.*) The letter also provides that if Atiogbe did not respond, the coverage would continue. (*Id.*) Atiogbe does not say whether she responded to this letter. She does claim, however, that she expected her benefits

---

[6]  It is unclear whether this was another notice that she had been absent without authorization for five days, or a notice of termination.

[7]  The letter explains that if she elected to continue her benefits, Atiogbe would be required to pay "[her] portion of the premiums" (Ex. B to Mot. to Dismiss), presumably meaning that USPS would pay the same portion of the premium that it paid when Atiogbe was working full-time.

5

to continue for 365 days, so the court assumes that she either opted into the continued coverage or did not respond. (Atiogbe Aff. ¶¶ 8–9.)

On June 23, 2014, Atiogbe received another letter about her benefits (dated June 20). This letter does refer to Atiogbe's "separation from the U.S. Postal Service" and may be the "separation notice" that Atiogbe claims to have received on June 23. (Ex. F to Mot. to Dismiss [35-6]; Atiogbe Aff. ¶ 14.) Although the February 20 letter stated that Atiogbe's benefits would continue for 365 days, this June letter announced that the benefits had ended on May 2, 2014; the court notes, however, that Atiogbe has not specifically complained about the late notice. (Ex. F to Mot. to Dismiss.)

On August 8, Atiogbe saw the doctor, and learned during that visit that her health insurance had not covered her last two doctor's visits. (SAC ¶ 41.) Atiogbe does not provide the dates of those previous appointments, but the court presumes they occurred after her benefits terminated on May 2. On August 10, she went to fill a prescription, and someone at the pharmacy advised her that her health insurance had been terminated. (*Id.* at ¶ 39.) Over the next several weeks, Atiogbe complained to various USPS employees and union representatives about these circumstances. (*Id.* at ¶ 40.)

### III. Atiogbe's Administrative Complaints

On July 16, 2014, Atiogbe "put in her request to initiate EEO Counseling." (*Id.* at ¶ 69.) She received a letter dated August 5 which "outlined" a "required 10-day response[,]" but "due [to Atiogbe's] hospitalization and mental state she was unable to reasonabl[y] reply." (*Id.*) She does not explain what prevented her from responding to this letter and pursuing the EEO process; in her affidavit, she merely repeats that she "became ill and was unable to complete the process." (Atiogbe Aff. ¶ 17.)

6

In her complaint, Atiogbe alleges that she submitted another "request for pre-complaint counseling" on September 16, 2014. (SAC ¶ 6.)[8] On her counseling form, Atiogbe wrote that she was subjected to disability discrimination, harassment, and retaliation. (*Id.*) She complained of the termination of her health insurance, her "separat[ion]" from USPS, and USPS's failure to accommodate her disabilities.[9] (*Id.*) After EEO counseling failed, Atiogbe brought a formal EEO charge.[10] (SAC ¶ 7; Ex. H to Mot. to Dismiss [35-8].) On the EEO charge form, under "type of discrimination," she checked "disability," and wrote in "harassment, discrimination, dispar[ate] treatment[.]" (Ex. H to Mot. to Dismiss.) The EEO charge did not identify retaliation as a basis of her claim and did not describe any specific actions by USPS employees. (*See id.*)

USPS sent an investigatory report to Atiogbe on March 16, 2015. (Ex. I to Mot. to Dismiss [35-9] at USPS 012–13.) Atiogbe avers that she "filed an appeal" on this date, but did not request a hearing. (*Id.*; Atiogbe Aff. ¶ 22.) The agency rejected Atiogbe's complaint on May 28, 2015. (*Id.* at USPS 024–25; *see* Atiogbe Aff. ¶ 23.) The agency addressed only Atiogbe's claim that her health insurance was terminated because of her disability—according to the agency decision, USPS dismissed her other allegations for "untimely contact with an EEO

---

[8] Atiogbe's affidavit states that she "filed an [i]nitial EEO claim on September 9, 2014 and agreed to the USPS EEO [r]edress process by September 16, 2014." (Atiogbe Aff. ¶ 19.) The EEO pre-complaint counseling form. dated September 16, 2014, states that Atiogbe requested an EEO appointment on September 8. (Ex. G to Mot. to Dismiss [35-7].) Construing the record in the light most favorable to Atiogbe, the court assumes that Atiogbe contacted the EEO counselor on September 8, and filed her pre-complaint counseling form on September 16.

[9] She also complains of various other behaviors not relevant to this suit: "lack of timely or professional notice" (she does not say of what), "[b]latant disrespect in [front] of coworkers," and "[i]nfractions of the NALC contract." (Ex. G to Mot. to Dismiss.)

[10] In her complaint, Atiogbe alleges she filed her EEO charge on December 23. (SAC ¶ 7.) In her affidavit, however, she says that she filed it on December 14, which is also the date on the EEO charge. (Ex. H to Mot. to Dismiss [35-8]; Atiogbe Aff. ¶ 20.)

Counselor." (Ex. I to Mot. to Dismiss at USPS 012.)[11]  USPS concluded that Atiogbe "was reactivated to employment with the Agency[,]" but it did not confirm whether or when her health benefits were reactivated.  (*Id.* at USPS 019.)  The decision does, however, state that her health insurance benefits terminated on November 26, 2014, after Atiogbe had been on leave without pay for more than one year, for non-payment of premiums.[12]  (*Id.*)

Atiogbe received her Notice of Right to Sue letter on June 1, 2015[13] (SAC ¶ 8), and filed her original *pro se* complaint in this court on August 27, 2015.  (*See generally* Compl. [1].)  She later retained counsel, and filed her second amended complaint (the complaint at issue here) on January 12, 2017.  In Count I, Atiogbe alleges Defendant discriminated against her on the basis of her disabilities[14] by harassing her, ignoring her medical and leave documentation, "terminating her employment on two occasions," requesting investigatory meetings in an effort to intimate her, and terminating her health benefits.  (SAC ¶¶ 49–54.)  She now avers that her benefits were terminated because her disability posed "a financial burden to [USPS]." (Atiogbe Aff. ¶ 7.)  In Count II, she alleges Defendant retaliated against her for her request for

---

[11] These allegations were dismissed in a separate decision on January 13, 2015, which is not part of the administrative record before the court. (Ex. I to Mot. to Dismiss at USPS 012.)  Atiogbe claims that she was hospitalized and "unable to answer" at the time, but her father sent a letter requesting time to appeal that partial dismissal (this letter is not in the record), which was denied.  (Atiogbe Aff. ¶ 21.)

[12] The agency decision states that USPS had no medical documentation of Atiogbe's conditions, nor of her work limitations. (Ex. to Mot. to Dismiss at USPS 020.)  It also referred to testimony from various USPS employees that they were not involved in terminating Atiogbe's health insurance.  (Id. at USPS 022.)  Because these facts are not in Atiogbe's complaint, the court declines to address them.

[13] Atiogbe also avers that she "received Notice of Investigator and Right to Sue Notice" on January 14, 2014, before any of her alleged grievances and before most of her five-day notice letters. (Atiogbe Aff. ¶ 20.)  The court has no information about this alleged January 14, 2014 communication.

[14] Atiogbe alleges a violation of the Americans with Disabilities Act (ADA), but as a federal employee, she has no remedy under the ADA; instead, the sole remedy for federal employees claiming disability discrimination is the Rehabilitation Act.  *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005).  The Rehabilitation Act is interpreted consistently with the ADA, however.  *Jackson v. City of Chicago*, 414 F.3d 806, 810 n.2 (7th Cir. 2005).

8

accommodation of her disabilities, her complaints to USPS and union representatives, and her April 1 union grievance. (SAC ¶¶ 58–60, 67.) She alleges that because of this allegedly protected activity, Defendant ignored her medical and leave paperwork, terminated her health insurance, "terminated her on two occasions[,]" excluded her from the union grievance process, and refused to file other grievances that she "request[ed]" (the court has no information about these alleged other grievances, nor is the court aware of why USPS and not the union would be responsible for initiating them). (*Id.* at ¶¶ 61–66.) Defendant has moved to dismiss the second amended complaint. For the reasons stated below, the motion is granted in part and denied in part.

## DISCUSSION

To overcome a motion to dismiss for failure to state a claim, the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is sufficiently plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts v. City of Chicago*, 817 F.3d 561, 564–65 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court will not, however, accept "[t]hreadbare recitals of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678.

### I. Time-Barred Allegations

First, Defendant argues that a portion of Atiogbe's claims must be dismissed for failure to exhaust administrative remedies. A plaintiff must "initiate contact with" an EEO counselor within 45 days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a); *see King v. Gonzales*, 186 F. App'x 675, 676 (7th Cir. 2006) (exhaustion also applies to retaliation claims). This contact is the first step in the process of exhausting administrative remedies before suit in federal court. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009).

Though Atiogbe contacted the USPS EEO on July 16, 2014, she admits that she did not file an EEO charge at that time. She then contacted an EEO counselor again on September 8,

and ultimately completed the administrative process. Defendant argues that Atiogbe's claims based on conduct that occurred more than forty-five days before September 8[15] (that is, July 25) are time-barred. Atiogbe has three responses: (1) she first contacted a counselor on July 16, (2) the time-barred conduct is "like and reasonably related to" the allegations in the pre-complaint counseling form, and (2) the forty-five day requirement to begin the administrative process should be equitably tolled because of Atiogbe's illness.

Atiogbe's first argument is a non-starter. She may have contacted an EEO counselor on July 16, but an abandoned EEO charge does not exhaust administrative remedies. *See Griffin v. Runyon*, No. 96 C 4117, 1997 WL 222944, at *4 (N.D. Ill. Apr. 30, 1997), *on reconsideration in part*, No. 96 C 4117, 1997 WL 359972 (N.D. Ill. June 24, 1997) ("[A]bandonment [of earlier EEO complaint] means that he did not exhaust his administrative remedies[.]"); *Hill v. Runyon*, 959 F. Supp. 488, 495 (N.D. Ill. 1997) (the plaintiff did not exhaust when "[h]e effectively abandoned administrative remedies in midstream[.]"); *cf. Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge."). Indeed, the word "exhaust" implies that a plaintiff must not merely initiate the administrative process, but follow it to completion. The fact that a plaintiff contacts a counselor does not exhaust his or her remedies unless he or she completes the administrative process.

Second, Atiogbe argues that the court should consider conduct outside the forty-five day window that is "like and reasonably related" to allegations that are not time-barred. In support, Atiogbe cites *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) and *Cheek v. Western & Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994), where the Seventh Circuit held when a complaint alleges conduct that was absent from an EEO charge, the court may consider those allegations when they are "like and reasonably related to"

---

[15] Defendants assert that Atiogbe contacted the EEO counselor on September 9, but as noted above, the court assumes she contacted a counselor on September 8.

and "growing out of" EEO-charged conduct. But this test applies only when the additional allegations would have been timely if they had been included in the EEOC complaint. *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *see also Arce v. Chicago Transit Auth.*, No. 14 C 102, 2015 WL 3504860, at *4 (N.D. Ill. June 2, 2015). This exception does not apply here.

Third, Atiogbe argues that the forty-five day requirement to begin the EEO process should be tolled because of her mental illness, which prevented her from pursuing her complaints when she first contacted the EEO on July 16. "[M]ental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) (emphasis in original). Simply suffering from mental illness in general does not toll a statute of limitations. Instead, the plaintiff must allege specific facts about his or her condition during the relevant time period that prevented him or her from complying with the deadline. *See Angiulo v. United States*, 867 F. Supp. 2d 990, 1001 (N.D. Ill. 2012).

Atiogbe claims that she initiated contact with the EEO counselor on July 16, but was "unable to complete the process" because she "became ill" and was hospitalized. (SAC ¶ 69; Atiogbe Aff. ¶ 17.) She does not, however, explain what she was hospitalized for or for how long she was hospitalized. Moreover, Atiogbe's allegations show that she was able to undertake other actions at approximately the same time. In June and July 2014, she was able to make "consistent calls" to various USPS employees. (Atiogbe Aff. ¶ 16; *see* SAC ¶ 67.) On July 21, she attended the USPS investigatory interview; on August 8, she visited her doctor; and on August 10, she went to her pharmacy to get medications. Atiogbe alleges that the EEO sent her a letter dated August 5, 2014, which required a response from her within ten days. During this ten-day window, she went to her doctor and to the pharmacy. Even taking as true Atiogbe's

claim that she was hospitalized at some point, without more facts, she has not sufficiently alleged that she was unable to respond to the letter because of mental illness.

Plaintiff may be able to allege facts supporting an inference that her mental illness did in fact prevent her from pursing the administrative process earlier, such that the statute of limitations is properly tolled. The court will permit her to file an amended complaint if she can do so consistent with Rule 11.[16] At this stage, however, the court will consider only the alleged discriminatory and retaliatory conduct that occurred within the forty-five days before September 8, 2014. The only alleged conduct within that window is the termination of her health benefits.[17]

## II. Disability Discrimination

To state a claim for disability discrimination, a plaintiff must allege "(1) that she is disabled; (2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Stevens v. Illinois Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000). Here, Atiogbe's requests for accommodation occurred outside the statute of limitations window, and she alleges only one timely adverse action: termination of her health benefits.

Defendant argues that Atiogbe's claim must be dismissed because she does not allege that she was able to perform her essential job functions. Though Atiogbe alleges that she can *currently* perform her job functions (Atiogbe Aff. ¶ 3), Defendants point out that she does not allege that she could do so when the adverse action (termination of health benefits) occurred. Atiogbe claims she gave USPS documentation of her ability to perform these functions from

---

[16] The court expects that Atiogbe will incorporate the relevant allegations in her affidavit into any amended complaint.

[17] Atiogbe does not allege that she was terminated from USPS after July 25, 2014. She does allege that she received a letter on June 23, 2014 that she characterizes as both a "five-day" notice and as a "termination" notice. But in her EEO charge and in her original *pro se* complaint, she alleged that she is still an employee of USPS. The court is therefore uncertain whether Atiogbe remains an employee of USPS, and if she is not, when she was terminated.

"November 2013 through the present," but this is inconsistent with her allegation that she was on leave without pay, was hospitalized, and was too ill to pursue her original EEO counseling, which all occurred during this period. *Cf. Garg v. Potter*, 521 F.3d 731, 737 (7th Cir. 2008) (affirming summary judgment for employer when employee's "conduct clearly demonstrates her inability to perform her job."); *compare King v. Aldi (Indiana), L.P.*, No. 1:15-CV-805-WTL-DML, 2016 WL 772830, at *2 (S.D. Ind. Feb. 23, 2016) (declining to dismiss complaint that alleged, without details, that the plaintiff was able to work at the "relevant times") *with Stanek v. AT & T*, No. 96 C 4096, 1997 WL 159102, at *3 (N.D. Ill. Mar. 28, 1997) (dismissing claim where the plaintiff admitted that he could not perform the essential functions of his job).

Yet the court is not convinced that Atiogbe must have been continuously able to work during this time; an employee on leave for health reasons usually cannot, by definition, perform his or her usual job functions while on leave. To require such a plaintiff to do so would be tantamount to a holding that a plaintiff on leave without pay can never state a claim of discrimination on the basis of her disability. Atiogbe alleges that she met USPS's requirements to go on leave without pay (and indeed, USPS sent her a letter to that effect). If she was properly on leave without pay, then Atiogbe *at that time* was not required to perform her ordinary job duties.

Defendant also argues that the court should dismiss the disability discrimination claim without prejudice because Atiogbe has not pleaded that she lost her health benefits because of her disability. Instead, Defendant argues, her benefits were terminated for "purely administrative reasons." (Def.'s Reply in Supp. of Mot. to Dismiss [42] 7.) Atiogbe acknowledges that the February 20 notice was a "standard personnel notice" (Atiogbe Aff. ¶ 9), but that notice states that her benefits should have continued for 365 days after her leave. Yet she was without health insurance as of August 2014, well before that termination should have occurred. The "administrative" nature of the notice does not explain why her benefits were terminated prematurely. It may well be that the inconsistent communications Atiogbe received

13

were a product of bureaucratic confusion. Without explanation, however, she has sufficiently alleged that her disability was the reason for this early termination of benefits.

## III. Retaliation

Atiogbe also claims Defendant took adverse action in retaliation for her protected activity. Defendant, first, argues that Atiogbe's retaliation claim is barred in its entirety, because she did not exhaust administrative remedies at all for her retaliation claim. Defendant points out that although Atiogbe wrote in her EEO pre-complaint counseling form that she was retaliated against, she did not mention her retaliation claim in her formal EEO complaint. *See Conner v. Illinois Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (an administrative charge must "detail[] the alleged discriminatory conduct"); *Thompson v. Fairmont Chicago Hotel*, 525 F. Supp. 2d 984, 990 (N.D. Ill. 2007) (dismissing a retaliation claim where the box for retaliation on the EEOC charge form was not marked). That Atiogbe mentioned retaliation in her pre-complaint form does not exhaust administrative remedies for that claim—if it did, the requirement for a formal EEO complaint would be meaningless.

A plaintiff can raise a claim in a lawsuit that was absent from an administrative charge if the claim and the administrative charge are (1) "like and reasonably related" to the charges actually described, and (2) the unmentioned claim "can reasonably be expected to grow out of an . . . investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. To satisfy this test, "the relevant claim and the administrative charge must, at minimum, describe the same conduct and implicate the same individuals." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013) (internal citation and quotation marks omitted).

Atiogbe's EEO charge and the timely portion of her retaliation claim identify the same adverse action: termination of her health benefits. In her affidavit, Atiogbe identifies some individuals she believes are behind the five-day notices (Hudson and Frazier), but she does not appear to know which of them set the termination of health benefits in motion while she was on leave. An investigation into the allegations that she lost benefits because of her disability could

reasonably reveal a retaliatory motive, as well. The court recognizes that claims of retaliation are often not deemed "like or reasonably related to" claims of substantive discrimination, *see Sitar v. Indiana Dept. of Transp.* 344 F.23d 720, 726 (7th Cir. 2003), but in this case the two claims do appear to involve the same conduct and the same individuals. The court concludes, for purposes of this motion, that Atiogbe's claim that the termination of health benefits was retaliatory is reasonably related to her administrative charge that her loss of benefits was discriminatory.

Second, Defendant urges that Atiogbe has not adequately alleged causation. Again, Defendants focus on the February 20 notice, pointing out that much of her protected conduct occurred after Atiogbe was on notice that her health benefits would end in 365 days. But again, Atiogbe alleges that her health benefits were terminated prematurely, so a decision to terminate her health benefits in or before August 2014 could have occurred after her various complaints between March and July 2014. Furthermore, Atiogbe specifically alleges that USPS wanted to terminate her benefits because of the financial burden her disability imposed. Though she does not name the specific individuals who were responsible for putting in motion the premature termination of her benefits, Atiogbe has alleged enough to infer that her complaints could plausibly have caused someone at USPS to terminate her benefits prematurely.

## CONCLUSION

Defendant's motion to dismiss the second amended complaint [35] is granted in part and denied in part. Defendant's motion to dismiss the first amended complaint [29] is stricken as moot. If she desires, Atiogbe has 21 days to amend her complaint as outlined above.

ENTER:

*[signature]*

Dated: May 19, 2017

_____
REBECCA R. PALLMEYER
United States District Judge

15